**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **MARIE MARTIN,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 15-82** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Marie Martin seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 11) and Defendant's Motion for Summary Judgment (ECF No. 12).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 12) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 11) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1967, has a college education, and previously worked as a registered nurse and nurse practitioner.  R. at 40, 159, 171.  Plaintiff applied for DIB on May 17, 2011 (with a protective filing date of May 16, 2011), alleging disability beginning on December 17, 2010, due to breast cancer surgeries, back injury, knee arthritis, alopecia, uterine fibroid, allergic rhinitis, lower back injury, and cancer.  R. at 124-25, 159, 170.  The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 45-70, 75-76, 79-87.  On July 22, 2013, ALJ Larry K. Banks held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 26-44.  On August 22, 2013, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of December 17, 2010, through the date of the decision.  R. at 8-25.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on November 6, 2014.  R. at 1-7.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On January 10, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

### Summary of Evidence

**A.      Opinion Evidence**

On September 9, 2011, a state agency medical consultant, A. Serpick, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 51-53.  Dr. Serpick opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 52. Plaintiff occasionally could kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 52.  She could balance and stoop without limitation.  R. at 52. Plaintiff had no manipulative, visual, communicative, or environmental limitations.  R. at 52-53. Dr. Serpick ultimately opined that Plaintiff could perform her past relevant work as actually performed.  R. at 53-54.

On June 5, 2012, another state agency medical consultant, Richard Surrusco, M.D., assessed Plaintiff's physical RFC.  R. at 62-64.  Dr. Surrusco opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 62.  Plaintiff frequently could balance and occasionally could stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 63.  Although she had no manipulative, visual, or communicative limitations, Plaintiff was to avoid concentrated exposure to hazards such as machinery and heights.  R. at 63-64.  Dr. Surrusco also opined that Plaintiff could perform her past relevant work as actually performed.  R. at 64-65.

In an opinion letter dated September 9, 2012, Tristan Shockley, M.D., of Metro Spine PC stated:

### Item: 1 and 2

[Plaintiff] was initially seen in the office on September 23, 2008 and has been followed up since then.  She came with complaints of low back pain with radiation to her left lower extremity.  She reports that this has been going on for 8 years now.  She has had multiple car accidents in the past and long commute on a bus to work for 4 hours daily.  Prior to being seen at this office, [Plaintiff] had several physical therapy sessions which she states did not seem to help.

She came in with her MRI which showed moderate central left parasagittal protrusion at L5-S1 impinging the left S1 nerve root.  She also brought her EMG report done by Dr. Rashid Khan which revealed acute S1 radiculopathy on the left.

On physical exam, [Plaintiff] has marked limitation in her lumbar [range of motion].  There is tenderness over the paraspinal muscles.  Straight leg raising is positive on the left side.  Sensation was intact, strength was normal and DTR's were 2+ bilaterally.

She then underwent transforaminal epidural steroid injection left L5-S1 on 9/23/2008 and was repeated on 10/15/2008.  She reported that the procedures helped.  She had radiofrequency ablation of the dorsal root ganglia of L5 and S1 on the left on 11/5/2008.

The procedures worked well for her.  She was able to go back to work on 1/29/2009 on light duty.  She continues to have pain but to a tolerable level.

She continued to work with restrictions.  She commutes 4 hours a day to work on a bus.  She continues to follow-up in this office.  On 6/11/2010 she had trigger point injection done.

She was seen on 2/18/2011 and reported that since she was last seen in the office she was diagnosed with breast cancer and had to undergo mastectomy followed by breast reconstruction surgery.  During those times, her back pain was aggravated.  She has pain radiating down her left leg with associated numbness and tingling sensation[.]

She underwent another series of transforaminal epidural steroid injection which she states has helped.  The last procedure was done [on] February 8, 2012.

**Item: 3**

[Plaintiff's] diagnoses are: Lumbosacral radiculopathy (724.4), Lumbosacral spondylosis without myelopathy (721.3), Lumbosacral degenerative disc disease (722.52)[.]

[Plaintiff] is unable to perform her core duties as a nurse due to these problems.

[Plaintiff] has chronic radiculopathy brought about by the disc herniation mentioned above. This is complicated by her diagnosis of breast cancer.

**Item: 4 and 5**

Her illness is expected to last more than one year; no prediction can be made as to when partial or full recovery will be attained.

We are recommending that she is totally permanently disabled and will [be] unable to maintain an employee appropriate schedule in the future given her multiple conditions.

R. at 435-36.

On September 17, 2012, another state agency medical consultant, W. Backlund, M.D., noted Dr. Shockley's opinion but nonetheless affirmed Dr. Surrusco's assessment of Plaintiff's RFC to perform her past relevant work. R. at 437-39. On July 1, 2013, George H. Drakes, M.D., of Metro Spine PC signed an opinion letter nearly identical to Dr. Shockley's letter. R. at 442-43. Dr. Drakes did note, however, that Plaintiff

was seen in March 2012 for a follow-up evaluation. She reports that her pain continues to bother her. Pain is in her lower back radiating down her leg. She also complains of numbness and tingling in her feet. Pain is aggravated by standing and walking for long periods of time. Sitting for long periods of time also worsen [sic] her pain.

R. at 443. Plaintiff's last epidural steroid injection was done on November 14, 2012, and another injection was scheduled for July 24, 2013. R. at 443. During a follow-up evaluation on "July 11, 2013," Plaintiff reported that she continued to have back pain and pain radiating down her left leg. R. at 443.

**B.      Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony:

> During the hearing, [Plaintiff] testified that she is currently getting a check from Veterans Services, and has been getting this disability check since March 2012.  She receives $2,600 a month.  Her past relevant work included working as a nurse at the VA, helping active soldiers stationed at Walter Reed.

> She testified that pain and fatigue prevents her from returning to that type of work.  She can stand for 45 minutes before she feels pain.  Pain in her upper and lower back causes difficulty while sitting.  She takes Motrin 800 on an as needed basis.  Without the medication, the pain was rated as a 6/10 on a scale of 1 to 10.

> During the day, [Plaintiff] is able to engage in light housework.  She is able to drive to church and the grocery store.  She is not able to go to the movies, but is able to go out to dinner at times.  She is receiving a disability check from Veteran's Affairs for her back pain and breast cancer.  She did not require chemotherapy and radiation to treat her breast cancer.

R. at 15-16; *see* R. at 29-39.

**C.      VE Testimony**

The VE testified that a hypothetical person with Plaintiff's same age, education, and work experience who could not work around dangerous machinery or unprotected heights and had the RFC outlined in Part III below could not perform Plaintiff's past work but could perform the sedentary, unskilled jobs of addresser, food and beverage order clerk, or taper for printed circuit boards.[2]  R. at 40-42.  With the exception of the sit-stand option, the VE's testimony was consistent with the *Dictionary of Occupational Titles*.[3]  R. at 42.  A reduction in productivity of

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* § 404.1568(a).

[3] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007);

15% would prevent substantial gainful activity.  R. at 42.  If one found Plaintiff's testimony regarding her inability to function for more than an hour per day to be credible, then she could perform no work.  R. at 42-43.

## III

## Summary of ALJ's Decision

On August 22, 2013, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of December 17, 2010; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as an addresser, food and beverage order clerk, or taper for printed circuit boards.  R. at 13-20.  The ALJ thus found that she was not disabled from December 17, 2010, through the date of the decision.  R. at 20.

In so finding, the ALJ found that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except that [Plaintiff] must have a sit-stand option.  [Plaintiff] can stand for 30-45 minutes before alternating to sitting for 30-45 minutes.  [Plaintiff] can engage in no climbing of ropes/ladders/scaffolds.  She can perform stooping on an occasional basis.  No above the shoulder lifting or above the shoulder constant reaching with the upper extremities.  Due to pain and the side effects of medication, [Plaintiff] is limited to simple instruction (no complex tasks) and may be off task up to 5% of the work-day.

R. at 15.

---

see *Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1).  "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption."  *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

The ALJ gave "substantial" but not "great" weight to the opinions of the state agency medical consultants because the ALJ did not agree with their opinions that Plaintiff could return to her past work as actually performed in the national economy.  R. at 18.  The ALJ did not afford controlling weight to Dr. Shockley's opinion:

> While [Plaintiff] credibly has pain due to her chronic radiculopathy and complicated by breast cancer, she is not as limited as proposed by Dr. Shockley. Dr. Shockley's opinion regarding [Plaintiff's] physical limitations has not been provided substantial or controlling weight because it is based primarily on [Plaintiff's] subjective allegations and is not supported by his objective findings nor those of any other medical source.

R. at 18.

The ALJ also considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  R. at 18-19.   In this regard, the ALJ found:

> In her function report, [Plaintiff] reported that she does not have any difficulty with personal care such as bathing, caring for her hair, shaving, and feeding herself [R. at 152].  She reported that she is able to prepare her own meals including making food such as sandwiches, frozen dinners, and light meals on a weekly basis [R. at 153].  She reported that she is able to do household chores such as dusting [R. at 153].  During the hearing, she testified that she is able to do light housework during the day.  She also testified that she is able to go out to dinner with her family.

R. at 19.  "Given this evidence, the undersigned concludes that [Plaintiff's] subjective complaints and alleged limitations are not fully persuasive."  R. at 19.

## IV

## <u>Disability Determinations and Burden of Proof</u>

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R.  §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R.  §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

# V

## <u>Substantial Evidence Standard</u>

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[5] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  Pl.'s Mem. Supp. Mot. Summ. J. 3-12,

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

ECF No. 11-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)).   Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work.   *Id.* at 6.   In particular, she contends that the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." *Id.*   Plaintiff also asserts that the ALJ erroneously evaluated the opinions of Dr. Drakes, her treating physician.   *Id.* at 6-11.   She further argues that the ALJ erroneously evaluated her credibility.   *Id.* at 12-15.   According to Plaintiff, substantial evidence thus does not support the ALJ's decision.   For the reasons discussed below, Plaintiff's assertions are unavailing.

**A.**   **ALJ's Determination of Plaintiff's Credibility**

The Court first turns to the ALJ's consideration of Plaintiff's credibility.   Pl.'s Mem. Supp. Mot. Summ. J. 12-15, ECF No. 11-1.   Plaintiff contends that the ALJ erred in finding that her symptoms may not have been accurately reported, that they may not exist at the level of severity alleged, and that they may have had other mitigating factors (R. at 16).   *Id.* at 14.

The Fourth Circuit reiterated the following standard in evaluating a claimant's complaints of pain or other symptoms.   *Dunn v. Colvin*, 607 F. App'x 264, 272-73 (4th Cir. 2015).   Whether "a person is disabled by pain or other symptoms is a two-step process.   First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged."   *Id.* at 272 (quoting *Craig*, 76 F.3d at 594).   "At this stage of the inquiry, the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment—a statutory requirement for entitlement to benefits—which could reasonably be expected to be the cause of the disabling pain asserted

13

by the claimant." *Id.* at 272-73 (quoting *Craig*, 76 F.3d at 594). Second, after the first inquiry is complete, the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Craig*, 76 F.3d at 595; *see* 20 C.F.R. § 404.1529(c)(1). "[T]his evaluation must take into account not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.) . . . ." *Craig*, 76 F.3d at 595 (citation omitted); *see* 20 C.F.R. § 404.1529(c)(1)-(2). The ALJ must also take into account "any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Craig*, 76 F.3d at 595; *see* 20 C.F.R. § 404.1529(c)(3); *see also* SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

> Yet while "a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers."

*Stiely v. Colvin*, 621 F. App'x 148, 150 (4th Cir. 2015) (per curiam) (alteration in original) (quoting *Craig*, 76 F.3d at 595).

> [T]here must be . . . a medical impairment . . . which, when considered with all evidence . . . (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A).

Thus, in light of the foregoing, an ALJ may rely upon evidence of a claimant's daily activities to evaluate subjective complaints of pain, as "[t]he only fair manner to weigh a

subjective complaint of pain is to examine how the pain affects the routine of life." *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994); *see* 20 C.F.R. § 404.1529(c)(3)(i).   Here, the ALJ noted Plaintiff's activities included performing household chores, attending to personal care, preparing meals, and going to dinner with her family.   R. at 19 (citing R. at 152-53), 34-35. Plaintiff also testified that she drove to church and the grocery store.   R. at 35.   A claimant's daily living activities can provide substantial evidence to discount the claimant's credibility.   *See Medhaug v. Astrue,* 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."); *Johnson*, 434 F.3d at 658 ("The ALJ also found [the claimant's] complaints of pain to be inconsistent with her testimony of her routine activities.   [The claimant] testified that she attends church twice a week, reads books, watches television, cleans the house, washes clothes, visits relatives, feeds the family pets, cooks, manages her household finances, and performs the stretches recommended by her chiropractor.   [The claimant] also testified that she can lift approximately ten pounds.   The ALJ logically reasoned that the ability to engage in such activities is inconsistent with [the claimant's] statements of excruciating pain and her inability to perform such regular movements like bending, sitting, walking, grasping, or maintaining attention."); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (upholding a finding of no disability where claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day); *Rahe v. Astrue*, 840 F. Supp. 2d 1119, 1136 (N.D. Iowa 2011) (finding that substantial evidence in record of claimant's reported activities supported adverse credibility determination of ALJ, who found that claimant had "reported activities of daily living including preparing meals, completing household chores, laundry, and shopping, activities which are not limited to the extent one would expect, given the

complaints of disabling symptoms and limitations"); *Henry ex rel. Henry v. Astrue*, Civil Action No. TMD-08-686, 2010 WL 3199344, at *5 (D. Md. Aug. 12, 2010) ("The ALJ reviewed Claimant's activities of daily living and noted he did some household cleaning, drove, grocery shopped, read, watched television, went outside on his own, and visited family and friends.  The ALJ's consideration of Claimant's daily activities was proper based on the regulations . . . ." (citation omitted)).  Substantial evidence thus supports the ALJ's determination of Plaintiff's credibility.

Plaintiff further maintains that the ALJ failed to consider the credibility factors under SSR 96-7p.  Pl.'s Mem. Supp. Mot. Summ. J. 14, ECF No. 11-1.  In *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 652 (D. Md. 1999), the plaintiff argued that "the ALJ failed to give a legitimate reason for disregarding the [plaintiff's] allegations, failed to take into consideration the factors listed in Social Security Ruling 96–7p, and did not set forth the weight he attributed to the evidence which influenced his credibility determination."  This Court in *Ketcher* noted, however, that SSR 96-7p requires an ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about that symptoms and how they affect the individual, and any other relevant evidence in the case record."  *Ketcher*, 68 F. Supp. 2d at 652.  This Court in *Ketcher* ultimately found that the ALJ in that case considered the entire record and addressed the objective evidence as well as the plaintiff's subjective complaints.  *Id.*

Here, before concluding that Plaintiff's subjective complaints and alleged limitations were not fully persuasive, the ALJ considered Plaintiff's activities of daily living (R. at 15, 18-19), the state agency medical consultants' opinions (R. at 18), and the evidence of record (R. at

16-18).  The Court thus finds that the ALJ complied with SSR 96-7p.  *See Ketcher*, 68 F. Supp.

2d at 652; *see also Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (per curiam) ("In

citing to [20 C.F.R.] § 404.1529 and based on the findings and discussion, it is clear that the ALJ

applied this Circuit's pain standard.").  Plaintiff's assertion to the contrary is without merit.

**B.      ALJ's RFC Assessment**

Plaintiff also asserts that the ALJ erroneously assessed her RFC.  Pl.'s Mem. Supp. Mot.

Summ. J. 3-12, ECF No. 11-1.  SSR 96-8p explains how adjudicators should assess RFC and

instructs that the RFC

> "assessment must first identify the individual's functional limitations or
> restrictions and assess his or her work-related abilities on a function-by-function
> basis, including the functions" listed in the regulations.  "Only after that may
> [residual functional capacity] be expressed in terms of the exertional levels of
> work, sedentary, light, medium, heavy, and very heavy."  The Ruling further
> explains that the residual functional capacity "assessment must include a narrative
> discussion describing how the evidence supports each conclusion, citing specific
> medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily
> activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted)

(citations omitted).  The Fourth Circuit has held, however, that a per se rule requiring remand

when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given

that remand would prove futile in cases where the ALJ does not discuss functions that are

'irrelevant or uncontested.'"  *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)

(per curiam)).  Rather, remand may be appropriate "where an ALJ fails to assess a claimant's

capacity to perform relevant functions, despite contradictory evidence in the record, or where

other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id.* (quoting *Cichocki*,

729 F.3d at 177).  The court in *Mascio* concluded that remand was appropriate because it was

"left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform

relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637.

Plaintiff first maintains that the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." Pl.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 11-1.  According to Plaintiff, the ALJ's decision "defies review" because the ALJ provided "no explanation to support his determination that [she] required a sit/stand option at 30 to 45 minute intervals, could perform no above shoulder lifting or constant reaching, was limited to the performance of simple instructions, and would be off task up to five percent of the workday." *Id.*  The ALJ found, however, that Plaintiff was limited to work involving simple instructions and no complex tasks because of her pain and medication side effects.  R. at 15, 40.  Because of problems with concentration and focus, the ALJ found that Plaintiff would be off task up to 5% of the workday.  R. at 15, 40-41.  The ALJ also found that Plaintiff's RFC had greater exertional and manipulative limitations than those opined by the state agency medical consultants, and Plaintiff "points to no medical evidence that would change the RFC."  *Finch ex rel. Finch v. Astrue*, Civil Action No. TMD 08-2706, 2012 WL 748383, at *3 (D. Md. Mar. 6, 2012).  Plaintiff thus fails to demonstrate prejudice from the claimed error.

Plaintiff next contends that the ALJ erred in his consideration of the opinion evidence.  In this regard, the Fourth Circuit in *Dunn* also reiterated the following standard for considering medical opinions.  *Dunn*, 607 F. App'x at 267-68.  When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's

opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654; *see* 20 C.F.R. § 404.1527. "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,'" *Dunn*, 607 F. App'x at 267 (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)), "or has failed to give a sufficient reason for the weight afforded a particular opinion," *id.* (citing 20 C.F.R. § 404.1527(d) (1998)); *see* 20 C.F.R. § 404.1527(c).

A treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see Dunn*, 607 F. App'x at 267. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) ("[A] treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c))). An ALJ may reject a treating physician's opinion in its entirety and afford it no weight if the ALJ gives specific and legitimate reasons for doing so. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001); *Craig*, 76 F.3d at 589-90).

A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 404.1527(d)(1). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id.* § 404.1527(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id.* § 404.1527(c)(4); *see also Dunn*, 607 F. App'x at 268.

Here, Plaintiff first erroneously contends that remand is warranted because the ALJ weighed Dr. Shockley's opinion but "did not evaluate the opinions of Dr. Drakes, [her] treating physician," as Dr. Drakes was Plaintiff's treating physician, while Dr. Shockley was not. Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 11-1. Rather, both the ALJ and Plaintiff's attorney recognized that Dr. Shockley, as Plaintiff's primary care provider, was a treating physician. R. at 6, 17. Further, Plaintiff concedes that the opinions of Drs. Shockley and Drakes are "virtually identical." Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 11-1. Because Plaintiff points to no harm from the ALJ's supposed error in failing to evaluate Dr. Drakes's opinion, her contention in this regard is unavailing. *See Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009) (burden is on party attacking agency's determination to show that prejudice resulted from error); *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."); *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("[R]eversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'" (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964))).

Plaintiff then maintains that the ALJ erred in concluding that the opinions of Dr. Drakes (and Dr. Shockley) are based primarily upon her subjective complaints.  Pl.'s Mem. Supp. Mot. Summ. J. 8-9, ECF No. 11-1.  She asserts that Dr. Drakes explained her medical history, the support of the doctor's diagnosis by her MRI and EMG results in 2008, and the lack of lasting results from her epidural steroid injections.  *Id.* at 8.  Plaintiff also points to "substantial medical reports from Dr. Drakes, dating back to September 23, 2008."  *Id.*

After Plaintiff's alleged onset date of disability, however, Dr. Drakes noted that, although she demonstrated pain "on extremes of motion," Plaintiff also demonstrated (1) no focal motor deficits or focal weakness in her lower extremities, (2) no overt evidence of instability, and (3) negative straight-leg raising bilaterally.[6]  R. at 407, 411, 431.  Plaintiff could toe walk and heel walk with good strength, and her range of motion in her upper back was within normal limits.  R. at 407, 411, 431.  Drs. Drakes and Shockley also noted that Plaintiff reported that her epidural steroid injections helped with her pain management.  R. at 435-36, 442-43.  Thus, substantial evidence supports the ALJ's finding that the opinion that Plaintiff was "totally permanently disabled" was based primarily on her subjective allegations (R. at 406, 410, 430, 436, 443).  *See Craig*, 76 F.3d at 590 (noting that conclusory medical opinion based on claimant's subjective reports and unsupported by opining physician's own notes was unpersuasive); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989))).

---

[6] The "straight leg raising test is a test done during a physical examination to determine whether a patient with low back pain has an underlying herniated disk.  The straight leg raising test is positive if the patient experiences pain down the back of the leg when the leg is raised." *Miller v. Astrue*, No. 1:09-CV-1257 SKO, 2010 WL 4942814, at *1 n.2 (E.D. Cal. Nov. 30, 2010).

Plaintiff further asserts that the ALJ failed to evaluate under SSR 96-2p whether the opinions of Dr. Drakes (and Dr. Shockley) should be accorded controlling weight. Pl.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 11-1. Under SSR 96-2p, however, "a finding that a physician's opinion is inconsistent with the other substantial evidence in a claimant's case record is adequate to support a determination that the opinion is not entitled to controlling weight." *Burger v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-1345, 2015 WL 467662, at *3 n.2 (D. Md. Feb. 2, 2015) (citing SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). Thus, "SSR 96-2p did not require the ALJ to make any additional findings to determine that [the] opinions [of Drs. Drakes and Shockley] were not entitled to controlling weight." *Id.*

Finally, Plaintiff points out that an ALJ must consider the factors cited in *Johnson* and in 20 C.F.R. § 404.1527(c) when not affording a treating source's opinion controlling weight. In this case, however, "[w]hile the ALJ did not explicitly analyze each of the *Johnson* factors on the record, the ALJ was clear that he concluded that the doctor's opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons under *Johnson*" to afford a treating physician's opinion less than controlling weight. *Bishop*, 583 F. App'x at 67. In short, substantial evidence supports the weight given to Dr. Shockley's opinion by the ALJ, whose error, if any, in not evaluating separately Dr. Drakes's opinion was harmless.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

**VII**

**<u>Conclusion</u>**

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 12) is

**GRANTED**.   Plaintiff's Motion for Summary Judgment (ECF No. 11) is **DENIED**.   The

Commissioner's final decision is **AFFIRMED**.  A separate order shall issue.


Date: March 10, 2016                                  _____/s/_____
                                                                         Thomas M. DiGirolamo
                                                                         United States Magistrate Judge